STATE OF ARKANSAS ex rel. NORWOOD,
Atty. Gen., v. RUST LAND & LUMBER
CO. et al.

No. 2350.

District Court, E. D. Arkansas.

July 16, 1931.

Hughes & Davis, of Memphis, Tenn., and Robert W. Wilson, of Pine Bluff, Ark., for plaintiff.

Sam Costen, pro. se, Wilson, Kyser, Armstrong & Allen, and Robert B. Goodwin, all of Memphis, Tenn., for defendants.

MARTINEAU, District Judge.

In this suit the state of Arkansas seeks to quiet its title against the adverse claims of defendants to certain lands lying in Phillips county, Ark., and to cancel a deed to these lands executed to defendants by the state land commissioner under what is known as the Island Act (Crawford & Moses' Dig. Ark. § 6796 et seq.).

First, the state claims these lands were the bed of the Mississippi river at the time of an avulsion in that river some time in the early '40's, and that there is not now and never has been any provision of law by which their title could pass from the state. It contends that they are not island lands.

Next, conceding, but not admitting, that they were island lands, the state asserts that the Island Act has been repealed, and was repealed at the time deed to defendants was executed by the state land commissioner, and that therefore there was no authority for the execution of that deed.

The state makes the further contention that even if the Island Act is in effect and the lands conveyed were in fact islands, yet they were not formed in a navigable stream, and that the act applies only to such lands, and not to islands generally, or islands that may be formed in a lake, and the state contends that if these lands were formed as an island that the island was formed in what is known as Horseshoe Lake.

The defendants claim, first, that the Island Act has not been repealed, and assert title to these lands under the deed of the state land commissioner made in pursuance to the terms of that act. They say that since there is doubt as to how these lands were in fact formed, the determination of the land commissioner that the lands were island lands is conclusive as against the state, as neither fraud nor collusion in the execution or procuring of the deed upon the part of the land commissioner or these defendants is alleged or proved. Defendants further say that if:

all the lands in controversy are not in fact island lands, that they hold title to them as accretions to adjoining lands to which it is conceded they have title. As a further defense to the state's claim of title to the lands in controversy, defendants say the state is estopped from asserting its title, if it had one which has not been conveyed, because the state has accepted money from these defendants in payment for these lands, and has permitted defendants for a number of years to pay taxes upon the lands and spend large sums of money to protect and preserve the timber, which is the most valuable part of the lands, and in addition that defendants spent large sums of money in a suit between Arkansas and Mississippi, by which the Supreme Court of the United States held the lands to be in Arkansas.

The lands in controversy prior to 1840 lay in what was then known as Horseshoe Bend, which was a peninsula in the Mississippi river formed by the river running in the shape of an ox-bow or horseshoe, with the neck of the bow being only a few miles apart. These lands are on the toe of that peninsula. Some time between 1840 and 1848 the river cut through this narrow neck and formed what has since been known as the Horseshoe Cut-off. This cut-off has been held by the United States Supreme Court to have constituted an avulsion, and left the boundary line between Arkansas and Mississippi where the main navigable channel of the Mississippi river was at the time of this cut-off. The facts, however, show conclusively that the cut-off did not occur suddenly, but extended over several years, that during these several years, probably extending down to 1868, boats passed around the old bed of the Mississippi river, and did not always go through the cut-off. Finally the two channels of the old river were closed at the cut-off and parts of that old channel to-day constitute what is known as Horseshoe Lake, and other smaller bodies of water.

The testimony unquestionably shows that from a very early date there were islands on the toe of this peninsula. To determine definitely whether these islands covered all the lands in controversy is impossible. The age of the trees, the nature of the soil, and the contour of the surface would indicate that much of the land was above the mean high-water mark at the time of this avulsion. This conclusion is reached, not from direct testimony, because no man living to-day can remember the conditions as they existed there in 1840, but from the theories advanced by the engineers and scientists who have testified in this case. All the available proof has been offered. Dr. Glenn, who has examined this territory carefully, gives it as his conclusion that many islands were formed on the toe of this peninsula prior to the time that the water ceased to flow through the old river channel. His conclusions appear to me to be sound, and are, perhaps, as accurate as the lapse of time and absence of direct testimony make possible of determination by any court or commission authorized to fix the character and nature of these lands. It will never be possible for any court to determine definitely which of the lands are island lands, which are accretion lands, or which are parts of the old river bed, just as it was not possible for the commissioners, who fixed the boundary line between Arkansas and Mississippi, to say definitely where that line was. The best they could do was to locate it in the deepest part of the old river, known then as Horseshoe Lake.

There must be an end to controversies of this kind. It is my conclusion that the lands in dispute were either island lands or accretion to the lands of defendants.

The question of whether the Island Act of 1917 has been repealed is one solely for the determination of the Supreme Court of Arkansas. That court has definitely held that the Island Act is unrepealed and in effect. Wilson v. Guthrie, 155 Ark. 315, 244 S. W. 338, and Jones v. Euper, 182 Ark. 969, 33 S.W.(2d) 378.

Since there is doubt and uncertainty as to the character of these lands, the Island Act reposed in the commissioner the discretion of determining whether the lands were island lands or lands of a different class. His determination that they were island lands and his conveyance of them to the defendants for a valuable consideration as that class of lands is conclusive as against the state, since neither fraud nor collusion is alleged or proved. The fact that others might differ with him as to whether these were island lands or not is not enough to justify the cancellation of his deed. The proof in this case is sufficient to show that in the exercise of a sound discretion reposed in him by law he could reasonably and honestly classify those lands as island lands. Lewis v. Owen, 146 Ark. 469, 225 S. W. 648; Reed v. Wilson, 163 Ark. 520, 260 S. W. 438.

The contention of the state that these islands were not formed in a navigable stream or river, but in a lake, is overcome by the

fact that water continued to flow through the old river for twenty years, if not longer, after the cut-off actually occurred. The trees found in this area are shown by many witnesses to be of an age antedating the time of the cut-off.

The principles of law announced in State of Iowa v. Carr (C. C. A.) 191 F. 257, should be given much weight in determining the present controversy. They are peculiarly applicable under the facts here established, and place upon the state a burden which it has not met.

The plaintiff's complaint will be dismissed, and defendants' title quieted to the lands in controversy.